(112 So. 716)

No. 26583.

## MEYERS et al. v. SOILEAU.

April 25, 1927.

*(Syllabus by Editorial Staff.)*

**Libel and slander**  ⚙️112(1)—Evidence held not to show that plaintiff, called "liar" in newspaper communication, was responsibile for rumor that defendant treated his children brutally.

In action for libel, in publishing communication in newspaper stating that plaintiff or any other person making remarks that defendant had put his children out of his home and treated them brutally "are liars," evidence *held* not to show that plaintiff was responsible for latter rumor, even if children voluntarily left defendant's house.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Action by Mrs. Edvise Meyers, wife, and another, against Felician Soileau, who filed a reconventional demand. Judgment for plaintiffs, and defendant appeals. Affirmed.

Dubuisson, Perrault & Burleigh, of Opelousas, for appellant.

L. Austin Fontenot, of Ville Platte, for appellees.

BRUNOT, J. This is a suit for damages. The petition alleges that the defendant published a libelous article in a local newspaper of the vicinity, in which he defamed and libeled the plaintiff, causing her humiliation and mortification and injuring her good name and reputation. The suit is for $5,000, the items of which are $3,000 for humiliation and mortification, and $2,000 for injury to her good name and reputation. The prayer is for a judgment in her favor and against the defendant for the sum of the said two items, with interest and costs.

The defendant answered the suit, admitted the publication, but averred its truthfulness, and that the publication was made without malice and for justifiable ends, and, by way of reconvention, alleged that the plaintiff libeled him by falsely accusing him of mistreating and putting his two daughters out of his house, and prayed for the dismissal of plaintiff's suit and for a judgment against plaintiff, and in his favor, on his reconventional demand, for $5,000, for injury to his feelings and reputation.

The case was tried and submitted on these issues, and from a judgment in favor of plaintiff and against defendant, dismissing defendant's reconventional demand and awarding plaintiff $500, with legal interest thereon from the date of the judgment, the defendant appealed. Plaintiff has answered the appeal, but, in this answer, she merely prays for an affirmance of the judgment.

Seventeen witnesses testified during the trial, ten of whom were called by the plaintiff and seven by the defendant. The learned trial judge does not review the testimony in his written reasons for judgment, but merely says:

"The plaintiff made out her case against the defendant, and there was no proof sustaining defendant's reconventional demand."

We have read the 121 pages of oral testimony in the record carefully, and we are convinced that the trial judge correctly found that the proven facts entitled the plaintiff to a judgment in her favor on the principal demand and to a judgment dismissing defendant's reconventional demand.

We will not attempt to review the testimony, for a summary of the facts is all that is required to fully sustain the trial judge's conclusions.

It is shown that plaintiff and defendant reside in or near the town of Mamou, Evangeline parish; that defendant caused to be published in the Evangeline Democrat, a newspaper published in the town of Mamou, the following card or communication:

"Mamou, La., June 25, 1921.

"Editor Evangeline Democrat, Mamou, La.— Dear Sir: Please allow me the following space: I wish to make it publicly known that it has been reported that I have put my children out of my home, and treated them brutally and I did not want them. This matter was made publicly known by Mrs. Adraste Vidrine, and I wish to say that she or any other person having made such remarks are liars, and I did not put them out.       Felicien Soileau."

Mrs. Adraste Vidrine is Mrs. Edvise Meyers, the plaintiff in this suit. It is shown that the defendant was, a widower, with two daughters approaching womanhood, and that the plaintiff and these young ladies had been on neighborly terms for some years. It is shown that the defendant informed his daughters that he was going to be married, that he left home on a trip for that alleged purpose and returned with a woman named Mrs. Edna Fruge, whom he introduced to them and to everybody in the neighborhood as his wife. It is shown that these young ladies lived in the house with their father and supposed stepmother for about two years, when they discovered that their father and Mrs. Fruge were not married. The daughters were then about 20 and 22 years of age, respectively, and, resenting the illicit relation in which their father was living, the eldest daughter demanded that he put Mrs. Fruge out of the house or put them out. The daughters testified that their father put them out, but the defendant testified that his daughters left the house of their own volition. It is shown that on the night the daughters, Misses Melicia and Merine Soileau, left or were ejected from their father's house, they went to the home of the plaintiff. It was about 10 o'clock at night; they were crying, and they told the plaintiff their father had put them out of their home. The day following this incident the plaintiff was at the store of Mr. Rene Lafleur and was told by Mr. Lafleur that the defendant was in trouble with his children, and plaintiff replied that the children had come to her house the night before, crying, and told her that their father had put them out of the house. Mr. Lafleur and the plaintiff testified that this is all that was said upon the subject by either of them, and defendant made no attempt to rebut their testimony. It is this conversation which caused the defendant, through the public press, to charge the plaintiff with publicly stating that defendant had brutally treated his children and had put them out of his home, and to denounce the plaintiff as a liar for so doing. When the plaintiff, as a witness, was asked if she encouraged or advised defendant's daughters the night they went to her house, she said:

"I didn't encourage them; they came and told me that they were put out; they were sorry and crying. I told them to be careful; that there was no other place like their father's home. They said they knew that, but that he had sent them away, and they asked me what to do. I said the elder sister was old enough to know what to do, that I could not tell them what to do. They didn't come to stay at my home. They just came to tell me sorrowfully like children will."

The quoted answer of the plaintiff is illustrative of all of her testimony. All of her statements are corroborated, and defendant made no serious attempt to rebut them; and the defendant himself admits that the plaintiff is an estimable woman. We fail to find in the testimony any evidence or offering tending to support defendant's reconventional demand.

The defense is the *truth* of the publication, and it is based entirely upon the testimony which shows that defendant's daughters were not forcibly or actually ejected from his house. Physical force is not the only effective method of driving a clean, pure, and decent woman from an environment of immorality and prostitution; but, if it be conceded that the estimable ladies, who spurned to live in such an atmosphere, voluntarily left their father's house, the charge in the defendant's

published card, that plaintiff was responsible for the rumor that defendant had brutally treated his children, is shown, by the record, to be false. From the proof, as a whole, we cannot conceive of a plausible reason for holding the defendant blameless for publicly denouncing the plaintiff, a respectable and respected woman, as a liar, and in this connection we commend the plaintiff and her husband for resorting to the courts for redress.

The learned trial judge based his estimate of the damages which should be allowed this plaintiff upon the following cases: Meyers v. Fusilier, 141 La. 131, 74 So. 790; Fatjo v. Seidel, 109 La. 699, 33 So. 737; Simpson v. Robinson, 104 La. 180, 28 So. 908; McClure v. McMartin, 104 La. 496, 29 So. 227.

In the Meyers-Fusilier Case the final judgment was for $250, but in all of the other cases there was judgment for $500. We concur in the view that these authorities should be accepted as the proper guide for fixing the damages to be awarded in this case.

For these reasons the judgment appealed from is affirmed at appellant's cost.